IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **EDGARDO MILLET SANCHEZ** * | CIVIL NO. 96-2052 (JAG) |
| Plaintiff * | |
| v. * | |
| **A.C.A.A., et. als.** * | |
| Defendants * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S OPPOSITION TO
RECOMMENDATION AND ORDER**

**TO THE HONORABLE COURT:**

**NOW COMES** plaintiff Edgardo Millet Sánchez, through the undersigned legal representation, and most respectfully sets forth and prays:

1.  On January 8th, 2002, Magistrate Gerardo Gelpí Recommended to this Honorable Court, the dismissal of the instant complaint. Hon. Magistrate Gelpí understood that plaintiff had failed to demonstrate that his psychiatric condition of paranoid schizophrenia "substantially limits" any major life activity. Hence, Magistrate Gelpí concluded that plaintiff Millet failed to meet his *prima facie* requirements to survive summary judgment in this disability discrimination claim. Pursuant to the provisions of Rule 501.2 of the Local Rules for the District of Puerto Rico, plaintiff hereby submits his objections to the Recommendation and Order.

2.  Plaintiff respectfully asserts that the Recommendation and Order fails to properly focus on and assess the relevant facts and correctly apply the substantive law for purposes of summary



judgment. Consequently, plaintiff hereby requests that this Honorable Court decline to follow the Recommendation and Order of January 8, 2002.

3. Specifically plaintiff asserts that the evidence on record successfully presents issues of fact concerning whether Mr. Millet's psychiatric condition represents a substantial limitation in major life activities sufficient to preclude summary judgment. The evidence presented could lead a reasonable jury to conclude that Mr. Millet's severe psychiatric condition represents a substantial limitation in his capacity to think, concentrate, perceive reality, to work and satisfy basic human needs.

4. Despite the evidence provided, taking into account the totality of the record in light most favorable to plaintiff, Hon. Magistrate Gelpí states that "plaintiff Millet makes scant and generalized statements about how his mental condition affect his daily activities." Recommendation and Order at page 7... "plaintiff Millet has failed to mention with specificity which particular life activity is substantially limited by his mental impairments." Recommendation and Order of January 8, 2002 at page 11. Plaintiff respectfully disagrees with Hon. Magistrate Gelpí's characterization.

Plaintiff's medical record of mental disability with his treating physician Dr. José Vázquez Sotomayor, the psychiatritic evaluations of Dr. Norberto Pellot, the deposition testimony of Dr. Vázquez and plaintiff's own deposition transcript is inundated with specific references to the substantial limitations to plaintiff's perceptual and thought processes by reason of his paranoid schizophrenia.

5. Plaintiff has consistently asserted that Mr. Millet's perceptual, affective, intellectual, social thought process have been severely affected by his mental condition. Because of the severely impaired perceptual and thought processes, plaintiff has argued that other activities of

central importance to any human being have also been affected, including but not limited to his capacity to concentrate, maintain social interactions, be able to leave the house, be free from delusions, hallucinations among others. (See Plaintiff's Opposition to Defendants' Request for Summary Judgment filed on May 30, 2000, and Plaintiff's Opposition to Defendants' Challenge to Plaintiff's Prima Facie Case and Plaintiff's Statement of Material Facts that Preclude Summary Judgment filed filed on February 27, 2001 and the references to the record therein. See also Recommendation and Order at pages 4, 7, 8 and the references to the record therein.

See also Dr. Vázquez's deposition, pages 19-26; 80-82; 29-33: Mr. Millet's condition causes him to be "ajeno de la realidad, believe he is someone else, abstracted from his own personality, believes he is being persecuted, sometimes experiencing both auditory as well as visual hallucinations, many times suffers from attention problems. Sometimes is disoriented, totally outside reality, other times he is not, apprehensive about crowds and places, experiences high anxiety when surrounded by people, in crowded places and cannot wait under this conditions. Has suffered from illogical speech, suicidal and homicidal thought, compromised memory, poor concentration, poor abstraction, poor judgment.)

6. Plaintiff also asserted, argued and submitted evidence regarding Mr. Millet's substantial limitation in working. It is significant to underline that it was Mr. Millet's psychiatric condition which justified the Social Security Administration to conclude he was totally disabled to work. According to the Social Security Administration's regulations this means that Mr. Millet is "not only unable to do his previous work but cannot engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d) (2) (A). The courts have consistently refused to apply the estoppel doctrine to ADA claimants that have successfully applied for and obtained Social Security benefits. This means that the Social Security

Administration's determination of disability does not represent a per se bar for ADA claims as long as the claimant can justify any inconsistencies between the statements of disability made to the SSA and a later assertion of "qualified to work" under the ADA statute. See **Cleveland v. Policy Management Systems Corp.,** 119 S.Ct. 1597(1999). For purposes of this case, this distinction is relevant inasmuch as the issue before this court does not center on Mr. Millet's assertion of being qualified to work. To the contrary, this ADA claim is consistent with the SSA determination that his mental disability in is significant enough as to preclude Mr. Millet from "engaging in any other kind of substantial employment."

7.      The fact that Mr. Millet has generated income selling the kennel of his male and female Yorkies, and has provided -from his home- catering services does not divest plaintiff's protection under the ADA, because "substantial limitation" is not synonymous with *utter inability*. **Bragdon v. Abbott,** 524 U.S. 624, 118 S.Ct. at 2206. It is a well established doctrine that an ADA claimant need not be absolutely incapable of performing all major life activities. The Supreme Court has clearly stated that when significant limitations result from the impairment, the definition is met even if the difficulties are not unsurmountable. **Id.** In **Albertson's Inc. v. Kirkingburg,** 527 U.S. 555, 119 S.Ct. 2162 (1999) the Court further clarified that a "mere difference does not amount to a 'significant restriction." The case most recently decided by the Supreme Court does not alter **Bragdon or Albertson's Inc.** In **Toyota Motor Manufacturing, Kentucky, Inc. v. Williams**, 2002 WL 15402 (Decided January 8, 2002) states that "Substantially" suggests "considerable" or to a large degree." The evidence in the record shows that Mr. Millet's capacity to engage in the major life activity of working is considerable due to the disabling symptoms of his schizophrenia. It should be noted that the Court's analysis centered on the impact of a physical injury to the major life activity of "performing manual

tasks." In that context the Court ruled sustained that performing manual tasks constitutes a major life activity.

Plaintiff hereby incorporates by reference the discussion of the legal standards discussed by Plaintiff in his Motions dated May 30, 2000 and February 27, 2001.

8.   The deposition testimony of Dr. Vázquez Sotomayor further illustrates the impact of Mr. Millet's condition on his capacity even to breed his two dogs and engage in catering. Dr. Vázquez testified that after the car accident Mr. Millet's condition worsened. He suffered a crises. "Specially he abandoned the dogs he had... he stopped breeding them. (Dr. Vázquez's deposition at page 87.) Mr. Millet testified that he is able to engage in catering when "he is stable, because if my health is not, I can't even deal with my dogs." (Plaintiff's deposition at page 32.) Therefore, Hon. Magistrate Gelpí's statement regarding the continued involvement of Mr. Millet in breeding his dogs and catering is not supported by the record. The record evidences that Mr. Millet's capacity to remain involved in either activity is dependent upon his emotional stability.

9.   In Mr. Millet's case, the record reflects that his mental condition impinges upon his capacity to live without breaking into an emotional crisis, to leave his home, to think rationally, or to take care of his baby girl. Mr. Millet testified that the symptoms of his psychiatric condition force him into social withdrawal and seclusion as he becomes unable to relate to others, to share spaces - specially when they are crowded. See Plaintiff's deposition - 2d sessions p. 11-12).

Mr. Millet testified that his psychiatric condition causes lack of thought coordination. According to Mr. Millet's testimony because of this he has lost his whereabouts and felt lost. Mr. Millet testified that his condition impairs his capacity to take his three year old girl to the pediatrician or take care of her altogether . "I have days that when I leave my house I feel,

bilious, irritable, even the open spaces upset me...That day I am better off at home, that's is I don't want to have greater problems on the street...it's not prudent for me to be in those conditions around there with my daughter. Not because of her, but because of me...I've gotten lost, alone and I don't want to expose my daughter to that...The, comes the lack of thought coordination." Even though Mr. Millet enjoys taking care of his daughter, he can only do so when his psychiatric condition allows and with its own limitations. He testified that since the girl "I have dedicated more time to her...I have taken care about me, taking care of my outside. The only thing that I feel sorry about is that she has to be as locked up ("encerradita") as I do... [I take care of her] [w]hen I am fine. When I am not file, there's a day-care center called Centro Maternal Margarita, there's a nurse across the street, it just so happens that she's the only grandaughter...there is no problem with that, I grab the phone and they show up to get her." ( Plaintiff Millet's February 10th 2000 deposition transcript at 84-85.)

Because of his psychiatric condition, it is of central importance for Mr. Millet to receive continued psychiatric medical treatment, which includes visits to the medical office of his psychiatrist. The record shows that Mr. Millet's capacity to attend to this basic need is significantly affected by the symptoms related to agoraphobia which provoke high anxiety when surrounded by people, in crowded places and cannot wait under these conditions. See Recommendation and Order pages 4 and 7 and the references to the record therein.

10.    Plaintiff has consistently asserted and submitted as evidence his record of disability, including the medical records of his own treating physician, Dr. José Vázquez Sotomayor and the psychiatric evaluations of co-defendant ACAA's psychiatrist Dr. Norberto Pellot. Mr. Millet's medical record of disability further elaborates and clarifies the depth and severity of Mr. Millet's psychiatric condition. This evidence could lead a reasonable jury to conclude that his

paranoid schizophrenia substantially impacts his emotional, mental and thinking process. Mr. Millet's schizophrenia severely compromises both his thought content and process.

11. The medical records show that Mr. Millet's schizophrenia produces severely altered mental states characterized by paranoia, delusion and hallucinations which have a substantial impact on plaintiff's capacity to think, concentrate and perceive reality. It hardly needs to be pointed out that an individual's capacity to think free of delusions and hallucinations is inescapably of "central importance to daily life." **Toyota Motor Manufacturing, Kentucky, Inc. v. Williams**, 2002 WL 15402 (Decided January 8, 2002); See, **Taylor v. Phoenixville School Dist.** 184 F.3d 296 (3rd Cir. 1999).

12. The record of Dr. Vázquez Sotomayor' deposition shows that plaintiff had to be confined to a mental hospital in 1993 - only two years before the incidents that give rise to the instant claim. The record also shows that since, he has suffered from severe psychosis, severe depression, severe insomnia, severe anxiety, gripped with delusions, thus the limitations on his capacity to think have been severe. The record shows that because of the severe nature of his mental disability, Mr. Millet has attempted suicide twice. Dr. Vázquez also testified that Mr. Millet suffers from attention problems; sometimes is disoriented, totally outside reality, other times he is not. Dr. Vázquez further attested to the impact of the schizophrenia on Mr. Millet as compromised, poor concentration, poor judgment (Dr. Vázquez's deposition p.19, 29-33)[1] Dr. Vázquez's deposition transcript and his medical record of plaintiff clearly state forth the severe nature, prolonged duration and permanent impact that results of the impairment. 29 C.F.R. 160.2 (j)(2)

---

[1] Hon. Magistrate Gelpí mentioned that some of plaintiff's references to the record seem incorrect. Therefore, plaintiff most respectfully apologizes for any unintentional confusion.

13. The record of psychiatric evaluations performed in 1995 and 1996 by Dr. Norberto Pellot, defendant ACAA's own psychiatrist further support the impact of the schizophrenia on Mr. Millet's level of functioning in life. On both occasions Dr. Pellot concluded that Mr. Millet's level of functioning was of a mere 30% according to the DSM IV. That is, his "[b]ehavior is **considerably** influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation ) or **inability to function in almost all areas** (e.g. stays in bed all day; no job, home or friends). Plaintiff's significant limitation in his thought process is further documented on both psychiatric reports when Dr. Pellot concluded that Mr. Millet "presents disorder of thoughts associations and ambivalences." Unexplainably, Magistrate Gelpí failed to consider this evidence which was incorporated as exhibits 2, 3 and 4 of Plaintiff's statement of Material Facts filed on February 27, 2001. Plaintiff hereby includes copies of the **translated** psychiatric evaluations performed by Dr. Norberto Pellot referenced above.

14. It is significant to underline that the evidence on record reflects the individualized assessment of the effect of the paranoid schizophrenia on Mr. Millet and the corresponding severely restricted and limited levels of general functioning. Thus plaintiff's argument is not merely based on the name of the diagnosis. **Toyota Motor Manufacturing, Kentucky, Inc. v. Williams**, 2002 WL 15402; **Sutton v. United Airlines, Inc.,** 199 S.Ct. 2139, 2147 (1999)

15. Because of the abstract nature of mental disabilities, its impact upon an individual's life might not seem as obvious as it would be a missing limb to a major life activity of walking, or eye sight to the blind, or the ability to talk for the mute, or the ability to hear for the deaf. It is for this reason that plaintiff has consistently asserted that the permanent duration and severe nature of Mr. Millet's mental disability impacts upon most aspects of his daily life. It can't hardly be

argued that an individual's capacity to think and perceive reality without delusions or hallucinations is of central importance for any human being. Similarly, it can't hardly be argued that an individual who suffers from altered psychic states is significantly deprived of his capacity to perform the tasks necessary to meet his own basic needs.

16. The manner and severity in which a mental disabling condition manifests its limiting impact on an individual's life is not comparable and cannot be measured according to those caused by a visually obvious minor physical impairment. While Mr. Millet may be able to perform concrete physical and biological tasks such as breathing, seeing, walk, climbing, lifting, the severe nature of his mental illness, limits his very basic need of a human being that distinguishes us from an individual whose mind is lost between fantasy and reality. That is, it is in the capacity to exercise judgment, to distinguish reality from fantasy, to think, to have a conscience of ourselves and an understanding of the limits and frontiers of our own self, is what separates normal human being from the abstract and invisible realm of madness.

17. Plaintiff respectfully asserts that Mr. Millet has submitted evidence sufficient for a reasonable jury to conclude that Mr. Millet meets the definition of "disabled" under the ADA. The evidence presented shows that Mr. Millet has both, a mental impairment that substantially Lmits one or more major life activities and has a record of such an impairment. 42 U.S.C. 12102(2)(A) (B).

The record also shows that the impact of Mr. Millet's paranoid schizophrenia substantially limits his capacity think, concentrate, perceive reality, live without psychotic episodes, maintain social interactions, engage in rational judgment, work, take care of others, among other limitations discussed above. It is inescapable to conclude that the areas in which

10

Mr. Millet suffers considerable limitations are of central importance to the daily life of any human being. **Toyota Motor Manufacturing, Kentucky, Inc. v. Williams**, 2002 WL 15402.

The record shows that Mr. Millet's limitations in engaging in the major life activities discussed are significant and considerable as compared to "normalcy" or "what the average person does." **Soileau v. Guilford of Maine, Inc.** 105 F.3d 12 (1st Cir. 1997). Mr. Millet's restrictions in the above mentioned central areas of daily living are significant as compared the average person in the general population, and are equally limited as to the " condition, manner and duration under which [Mr. Millet] can perform [the] as compared to the condition, manner or duration under which an individual under which the average person in the general population can perform the same [activities]." 29 C.F.R. 1630.2(j)

The record also shows that Mr. Millet's limitations do not constitute "only a mere difference" as compared "to most people." **Albertson's, Inc. v. Kirkingburg,** 119 S.Ct. 2162, 2168 (1999). Mr. Millet's capacity to think, concentrate, perceive reality, live without psychotic episodes, maintain social interactions, engage in rational judgment, work, take care of others, among other limitations discussed above, are severe, have been experienced for a a prolonged period of time and are of a permanent nature. 29 C.F.R. 1630.2 (j)(2).

"Engaging in [m]ental and emotional processes such as thinking, concentrating and interacting with others..." have been recognized as "major life activities." 29 C.F.R. app. 1630.2(I). In **Taylor v. Phoenixville School Dist.,** 184 F.3d 296 (3d. Cir. 1999), the court ruled that summary disposition was precluded because genuine issue of material fact existed on whether plaintiff's mental impairment - bipolar disorder- substantially limited a major life activity. The court recognized the difficulty in assessing the impact of mental impairments on an

individual's life. The court sanctioned "**thinking**" as valid major life activity that may be substantially limited by an individual's mental impairment. It stated:

> "Perhaps the activity [thinking] is rather broad, but given the difficulty of specifying the different constituents of thinking or otherwise narrowing this central activity (**especially when discussing the effects of psychosis or its subclinical manifestations**) we try not to constrict [plaintiff's arguments about how her condition affects her ability to work.] The illness can appear fairly late in life **regardless of life events or stressors.** Treating physician confirms her condition is chronic and requires her to stay on anti psychotic medication and has continued to need the medication on a daily basis.

**Taylor,** supra, at 307.

In **Taylor**, the court considered relevant for the "substantially limited" analysis, the fact that plaintiff continued to need medication, that the drug has not perfectly controlled plaintiff's symptoms, including paranoia and impaired concentration. The court ruled that these constituted sufficient evidence to require a trial on whether she continued to be substantially limited.

**Taylor** also reaffirmed the principle that chronic episodic conditions can easily limit how a person performs an activity as compared to the rest of the population. The court recognized that "repeated flare-ups of poor health can have cumulative weight that wears down a person's resolve and continually breaks apart longer term projects". **Taylor,** supra, at 308-309.

Plaintiff most respectfully asserts that like in **Taylor,** supra., plaintiff's psychiatric condition and the record of impairment demonstrate he continued need for anti-psychotic medication on a daily basis and psychiatric medical treatment. See Recommendation and Order page 4. The record shows that Mr. Millet continues to suffer severe symptoms associated with his psychiatric condition including severe insomnia, severe psychosis, delusions, hallucinations, among others, and that his global assessment of general functioning has been rated at a minimum of 30%. See Recommendation and Order page 4 and Exhibits 1, 2 and 3 attached herein.

(Exhibits already submitted to the Honorable Court in Plaintiff's motion filed February 27, 2001. Please refer to paragraph 13, ante.)

Plaintiff respectfully asserts that the evidence presented sufficiently demonstrate the existence of a genuine material issue of fact on whether he is substantially limited in major life activities by his psychiatric condition. The evidence presented "is sufficient to support a rational resolution in favor of either party and capable of swaying the outcome of the litigation under applicable law." **National Amusement, Inc. v. Town of Dedham**, 43 F.3d 731, 735 (1st Cir. 1995); **Nereida González Tirado v. Tirado-Delagado**, 990 F.2d 701, 703 (1st Cir. 1993). Thus summary judgment is precluded as a matter of law and the issue should be submitted to the jury. **Celotex Corp. v. Catrett,** 477 U.S. 316, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986); **Katz v. City Metal Co. Inc.** 87 F.3rd 26 (1st Cir. 1996); **Lipsett v. University of Puerto Rico**, 864 F.2d 881, 894-895 (1st Cir. 1988).

Plaintiff most respectfully requests that this Honorable Court recognize Mr. Millet's due claim of disability discrimination pursuant to the Americans with Disabilities Act by denying its summary disposition. Plaintiff further requests that this Honorable Court do not allow any further delay in the resolution of this case by promptly submitting this case to a jury.

**WHEREFORE,** plaintiff Edgardo Millet Sánchez most respectfully requests that this Honorable Court decline to follow the Recommendation and Order dated January 8, 2002 and Order the denial of all requests for summary disposition.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 18th day of January 2002.

I HEREBY CERTIFY: that a true and exact copy of this document has been sent to **Jaime Morales, Esq.,** Iturregui Plaza, Suite 200, 65 Infantería, Río Piedras, **Puerto Rico 00924;**

**Roberto Ruiz Comas, Esq.**, Andalucía 406 (Altos), Puerto Nuevo, San Juan, Puerto Rico 00920; **Jesús R. Rabell Méndez, Esq.**, Roselló Rentas- Rabell Méndez, P.O. Box 193540, San Juan, Puerto Rico 00919-3540.

MARICARMEN ALMODOVAR DIAZ
U.S.D.C. P.R. 204406
P.O. Box 363871
San Juan, Puerto Rico 00936-3871
Tel.(787) 289-7896
Fax. (787) 289-8779