# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

EDGARDO MILLET SANCHEZ

    **Plaintiff**

       v.                    **CIVIL NO.** 96-2052 (JAG)

ACAA, <u>et al.</u>

    **Defendants**

---

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Plaintiff Edgardo Millet Sanchez ("Millet") brought suit against defendants Dr. Luis Gonzalez Alonso ("Gonzalez Alonso"), Dr. Angel Santiago Ponce ("Santiago Ponce") and the Automobile Accidents Compensation Administration ("ACAA," for its Spanish acronym), alleging that the defendants[1] discriminated against him because of his disability, in violation of Titles II and III of the Americans with Disabilities Act ("ADA"), and various state laws. All three defendants filed separate motions for summary judgment.[2]

---

[1]Millet also sued the conjugal partnerships formed by the defendant doctors and their respective spouses.

[2]The Court (Dominguez, D.J.) had earlier adopted Magistrate-Judge Aida Delgado's unopposed report and recommendation dismissing all state law claims then pending against ACAA.




On December 13, 2001, Magistrate-Judge Gustavo Gelpi issued
a report and recommendation denying ACAA's summary judgment
motion.  (Docket No. 135.)  The Court adopted the report and
recommendation on January 11, 2002.  (Docket No. 137.)  On
January 8 and January 14, 2002, Magistrate-Judge Gelpi issued two
additional reports and recommendations granting Gonzalez Alonso's
and Santiago Ponce's summary judgment motions.  (Docket Nos. 136,
138.)  On January 18, 2002 and January 24, 2002, Millet filed
objections to Magistrate-Judge Gelpi's reports and
recommendations as to Gonzalez Alonso and Santiago Ponce.
(Docket Nos. 139, 140.)

On July 24, 2002, ACAA filed another summary judgment motion
(Docket No. 147), arguing that the Magistrate-Judge's finding
that Millet was not a "qualified individual with a disability"
pursuant to the ADA should apply to it as well.  On September 4,
2002, the Court issued an order staying all proceedings pending
resolution of all dispositive motions.  (Docket No. 170.)  Upon
review of the record, the Court adopts the Magistrate-Judge's
reports and recommendations (albeit on an alternative ground),

----

(Docket No. 20.)  On May 25, 2001, Millet filed an Amended
Complaint containing additional state law claims against all
defendants, including ACAA.  (Docket No. 127.)

and grants Gonzalez Alonso's and Santiago Ponce's summary

judgment motions.   Additionally, the Court denies ACAA's latest

summary judgment motion.   This case shall proceed against ACAA.

## FACTUAL BACKGROUND[3]

In 1986, Millet suffered an accident while working as a cook

at Aurorita's, a Mexican restaurant.   He sustained second-degree

burns and had to be hospitalized as a result.   During his stay at

the Burn Unit of the Industrial Hospital, he developed an anxiety

disorder.   Millet thereafter received psychiatric treatment at

the Bayamon Regional Hospital's Medical Health Clinic.   At some

point, he stopped his treatment at the Medical Health Clinic.   In

1993, he began receiving psychiatric treatment from Dr. Jose

Vazquez Sotomayor ("Vazquez Sotomayor"), a private psychiatrist.

Vazquez Sotomayor diagnosed Millet as having chronic

paranoid schizophrenia and schizo-affective disorder.   Paranoid

schizophrenia is a psychotic illness that causes a person to

believe that the world wants to hurt him.   The patient generally

suffers from visual and auditory hallucinations, has attention

problems, believes he is being persecuted, and is at times

---

[3]The Court factual background is largely culled from the
Magistrate-Judge's reports and recommendations.   See Docket No.
136 at 3-8; Docket No. 138 at 3-6.

disoriented and outside reality. Millet also claims to suffer
from agoraphobia, a condition that causes a person to feel
apprehensive about crowds or places.[4] Vazquez Sotomayor
testified, *inter alia*, that Millet experiences high anxiety when
surrounded by people or when he is in crowded places, and cannot
wait in those situations.

Vazquez Sotomayor prescribed a series of medications to
Millet. In July 1993, Vazquez Sotomayor recommended that Millet
be hospitalized through the Puerto Rico State Insurance Fund, and
later referred Millet to be hospitalized at the Mepsi Center, a
mental health hospital in Puerto Rico. Millet's medical records
show that he has exhibited symptoms related to schizophrenia and
affective disorders, and has experienced severe psychosis,
depression, insomnia, and anxiety as a result of them.

On August 28, 1995, Millet was involved in a car accident in
which he injured his legs, requiring medical attention and,

---

[4]The parties dispute whether Vazquez Sotomayor ever
diagnosed Millet as suffering from agoraphobia, separate and
apart from his other diagnoses of Millet's condition. The record
suggests that he did not. In a sworn declaration under penalty
of perjury, however, Vazquez Sotomayor asserts that agoraphobia
is one of the most pervasive symptoms within Millet's psychiatric
condition. Defendants have attacked this assertion as self-
serving, but have not proffered competent medical evidence to
support their own position.

eventually, orthopedic surgery.  Following the accident, he was taken to the Bayamon Regional Hospital, where the medical staff took X-rays and placed a cast on his right leg.  They also gave him the requisite paperwork to take to ACAA to receive a medical referral.

ACAA first referred Millet to Dr. Rufino Montañez ("Montañez").  Montañez examined Millet and concluded that he needed emergency surgery.  He also noted that Millet had an emotional condition that needed to be taken into account.[5] Montañez operated patients at the Bayamon Regional Hospital, however, and Millet found the location to be inconvenient for him and his family.  Accordingly, Millet decided to return to ACAA for a new referral.

On September 11, 1995, ACAA referred Millet to Gonzalez Alonso, an orthopaedist.  When Millet arrived at Gonzalez Alonso's office, the receptionist asked Millet to put his name on a patient waiting list.  She also instructed Millet to wait in the office's reception area.  Millet informed the receptionist that he suffered from agoraphobia (and described its symptoms),

_____

[5]It appears that Millet had an emotional crisis at Montañez's office that caused Montañez to opine that Millet's emotional condition required special attention.

and asked to be seen before other patients.  After the
receptionist informed Millet that Gonzalez Alonso saw patients on
a first-come, first-served basis, Millet went into a bathroom,
locked himself inside, and had a crisis.  Gonzalez Alonso's staff
informed him of the situation, and he asked his secretary to
allow Millet into his office.  Millet explained to Gonzalez
Alonso that he suffered from a disability due to a nervous
condition and that, as a result, he could not be surrounded by
people.  Gonzalez Alonso testified that after speaking with
Millet, he had reason to believe that Millet had a proper basis
for requesting a special accommodation.

     Gonzalez Alonso reviewed Millet's medical records and
noticed that Montañez had diagnosed Millet as suffering from a
right ankle displaced fracture and as needing orthopedic surgery.
Gonzalez Alonso did not physically examine Millet.  He concluded
that he could not treat Millet because he did not believe that,
given Millet's mental condition, he would be able to control
Millet after a surgical procedure.  Gonzalez Alonso opined that
Millet would be better served by attending a multi-disciplinary
facility such as the Puerto Rico Medical Center, which employs
various full-time specialists who could tend to Millet's
particular medical and psychiatric needs.  Since Gonzalez Alonso

decided that he could not treat Millet, he did not bill ACAA for his services.

ACAA next referred Millet to Santiago Ponce, also an orthopaedist. Millet called Santiago Ponce's office to request an appointment. He also requested a reasonable accommodation for his condition of agoraphobia. Santiago Ponce's secretary explained that the doctor saw patients based on their order of arrival. Millet then asked to speak with Santiago Ponce. The parties disagree on the substance of the conversation, but there is no dispute that after speaking briefly, Millet hung up the telephone and never contacted Santiago Ponce's office again.[6]

On October 2, 1995, ACAA referred Millet to Dr. Cesar Cintron Valle ("Cintron Valle"). ACAA personnel explained Millet's medical and psychiatric condition to Cintron Valle, and asked whether he could see and evaluate Millet promptly. Cintron Valle agreed to do so. He operated Millet's fractured foot at the Hospital San Francisco.

On August 28, 1996, Millet filed suit.

--------------------

[6]Santiago Ponce alleges that he asked Millet to come into the office early and take one of the first turns of the day. Millet alleges that he asked for a separate waiting area, and even suggested waiting in the hallway outside Santiago Ponce's office. Santiago Ponce allegedly rejected both suggestions out of hand.

## STANDARD OF REVIEW

A.    <u>Standard for Reviewing a Magistrate-Judge's Report and Recommendation</u>

A District Court may, on its own motion, refer a pending motion to a U.S. Magistrate-Judge for a report and recommendation.  <u>See</u> 28 U.S.C. §636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 503.  Pursuant to Fed. R. Civ. P. 72(b) and Local Rule 510.2, the adversely affected party may contest the Magistrate-Judge's report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. <u>See</u> 28 U.S.C. §636(b)(1).  Since Millet's has filed timely objections to the Magistrate-Judge's reports and recommendations, the Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which Millet made specific objection.  See <u>United States v. Raddatz</u>, 447 U.S. 667, 673 (1980); <u>Lopez v. Chater</u>, 8 F. Supp.2d 152, 154 (D.P.R. 1998).

B.    <u>Summary Judgment Standard</u>

The standard for summary judgment is governed by Fed.R.Civ.P. 56.[7]  The Court may grant summary judgment only if

_____

[7]In addition, this District's Local Rule 311.12 requires the moving party to file and annex to the motion a "separate, short, and concise statement of the material facts as to which the

8

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A properly supported motion can be survived only if the non-moving party shows that a trial worthy issue exists.  The party opposing the motion cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.  Not every controversy is sufficient to preclude summary judgment.  The fact has to be "material" and the dispute must be "genuine." "Material" means that a contested fact has the potential to change the outcome of a suit.  The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party.

---

moving party contends there is no genuine issue to be tried," properly supported by specific references to the record. D.P.L.R. 311.12.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. Consequently, in order to defeat the motion, the party opposing summary judgment must present competent evidence supporting its position. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). To make this assessment in a given case, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). When carrying out that task, the Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F. 2d 5, 8 (1st Cir. 1990).

## DISCUSSION

I. The Reports and Recommendations as to Gonzalez Alonso and Santiago Ponce

The reports and recommendations involving the doctor defendants concluded that Millet was not disabled pursuant to the ADA. Specifically, Magistrate-Judge Gelpi concluded that Millet was not substantially limited in the major life activity of

10

working.  Millet objects to the Magistrate-Judge's rulings, and contends that he is not only substantially limited in the major life activity of working, but is also limited in the major life activities of thinking, concentrating, and interacting with others.[8]  Even assuming *arguendo* that Millet is correct, the Court concludes that there is an alternative ground for disposition that requires dismissal of his Title III claims against the doctor defendants.

A.    Title III of the ADA

Title III generally prohibits discrimination on the basis of disability in public accommodations operated by private entities. See 42 U.S.C. § 12182(a).  To make out a *prima facie* case under Title III, Millet must prove (1) that he has a disability as defined under the ADA; (2) that the defendant's office is a private entity that owns, leases, or operates a place of public accommodation; (3) that he requested a reasonable modification of defendant's policies or procedures to allow him access to the public accommodation; and (4) that the defendant failed to make reasonable modifications that would accommodate his disability

─────────────────────

[8]Millet also alleges that he is substantially limited in the major life activities of "perceiv[ing] reality" and "satisfy[ing] basic human needs."

11

without fundamentally altering the nature of the public
accommodation.  See 42 U.S.C. § 12182(a), (b)(2)(A)(ii).

During the course of litigation, Millet appears to have been
operating on the mistaken assumption that he is entitled to a
jury trial -- and, if successful, to compensatory damages -- on
his Title III claim.  He is not.  Millet is not entitled to
recover compensatory damages under Title III.  See 42 U.S.C. §
12188(a)(1); Sigros v. Walt Disney World Co., 190 F. Supp.2d 165,
168-69 (D. Mass. 2002).  Pursuant to Title III, the Court may
award monetary damages only when the Attorney General becomes
involved in the matter.  That is clearly not the case here.  See
42 U.S.C. §§ 12188(b)(2), 12205.

Millet can seek injunctive relief under Title III.  Indeed,
injunctive relief is the only type of relief available to private
plaintiffs who sue under Title III.  See 42 U.S.C. § 12188(a)(1).
In his Amended Complaint, Millet asks the Court to enjoin
defendants "from further denying medical treatment to persons
with disabilities."  (Docket No. 127 at 5.)  Nowhere in the
Amended Complaint -- or elsewhere in the record -- does Millet
suggest that it is even remotely likely that he will seek
defendants' services in the future.  The Court must therefore
determine whether Millet has standing to seek injunctive relief

under Title III.

It is well-established that a plaintiff must have standing to make a claim for injunctive relief under Title III. "[A] plaintiff seeking injunctive relief premised upon an alleged past wrong must demonstrate a 'real and immediate threat' of repeated future harm to satisfy the injury in fact prong of the standing test." <u>Aikins v. St. Helena Hosp.</u>, 843 F. Supp. 1329, 1333 (N.D. Cal. 1994)(quoting <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 111 (1983)). Thus, "although a plaintiff need not repeatedly suffer discrimination in order to assert [his] rights under Title III, ADA plaintiffs who seek injunctive relief must demonstrate that they themselves face a real and immediate threat of future harm ...." <u>Deck v. American Hawaii Cruises</u>, 121 F. Supp.2d 1292, 1297 (D. Haw. 2000).

A number of courts have denied standing for claims of injunctive relief under the ADA where the plaintiff fails to show a real or immediate threat of injury. See <u>Jairath v. Dyer</u>, 154 F.3d 1280, 1283 n. 8 (11th Cir. 1998)(holding that plaintiff did not have standing to seek injunctive relief where he had no intention of seeking further medical advice or treatment from defendant); <u>Pryor v. NCAA</u>, 288 F.3d 548, 561 (3rd Cir. 2002)(noting that "in ADA cases, courts have held that a

13

plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination"); <u>Shotz v. Cates</u>, 256 F.3d 1077, 1081 (11th Cir. 2001); <u>Majocha v. Turner</u>, 166 F. Supp.2d 316, 324 (W.D. Pa. 2001); <u>Hoepfl v. Barlow</u>, 906 F. Supp. 317, 320-21 (E.D. Va. 1995); <u>Schroebel v. New York Univ. Med. Ctr.</u>, 885 F. Supp. 594, 598-99 (S.D.N.Y. 1995); <u>Aikins</u>, 843 F. Supp. at 1334.

Here, Millet has not alleged that he plans to use defendants' services in the future.  (Indeed, the record suggests precisely the opposite.)  As a result, the only remedy available under Title III, an injunction, is not available to Millet. Since Millet has not shown that he has standing to pursue a claim for equitable relief under Title III, the Court will adopt the Magistrate-Judge's recommendation, and grant Gonzalez Alonso's and Santiago Ponce's summary judgment motions.

II.  <u>ACAA's Summary Judgment Motion</u>

In its summary judgment motion, ACAA contends that it should benefit from Magistrate-Judge Gelpi's conclusion that Millet is not disabled under the ADA.  Because the Court adopted the reports and recommendations on an alternative ground, it did not consider this line of reasoning.  It will do so now.

A.    <u>Title II of the ADA</u>

Title II of the ADA prohibits discrimination against persons with disabilities by "public entities," and is modeled on § 504 of the Rehabilitation Act, Pub. L. No. 93-112, 87 Stat. 355 (1973)(codified as amended in scattered sections of 29 U.S.C.). A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B). The First Circuit recently observed that there is "sparse caselaw" interpreting Title II's scope and limits. <u>See</u> <u>Parker v. Universidad de Puerto Rico</u>, 225 F.3d 1, 4 (1st Cir. 2000).

Title II provides, *inter alia*, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Pursuant to Title II, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the

15

plaintiff's disability.  See Parker, 225 F.3d at 5; Race v.

Toledo-Davila, 291 F.3d 857, 858 (1st Cir. 2002).

B.    Disability Under The ADA

Millet can satisfy the ADA's disability requirement by

demonstrating that he has a physical or mental impairment that

substantially limits one or more major life activities.[9]  42

U.S.C. § 12102(2)(A).  The Court applies a three-part analysis

when considering statutory disability under the ADA.  First, the

Court considers whether Millet's alleged condition constitutes a

mental or physical impairment.  Second, the Court determines

whether the life activities upon which Millet relies constitute

"major life activities" under the ADA - that is, activities "of

central importance to daily life."  Toyota Motor Mfg., Ky., Inc.

v. Williams, 534 U.S. 184, 122 S.Ct. 681, 691 (2002).  Third,

"tying the two statutory phrases together, [the Court asks]

whether the impairment substantially limits the activity found to

be a major life activity."[10]  Lebron-Torres v. Whitehall Labs.,

_____

[9]The ADA provides two additional ways in which Millet may
prove the existence of a "disability": by having a record of such
impairment, or by being regarded as having such an impairment.
42 U.S.C. § 12102(2)(B) & (C).  See, e.g., Carroll v. Xerox
Corp., 294 F.3d 231, 238 n. 4 (1st Cir. 2002).

[10]The ADA does not define "substantially limits."  The
relevant EEOC regulations define "substantially limits" as either

251 F.3d 236, 239-40 (1st Cir. 2001)(citing <u>Bragdon v. Abbott</u>,

524 U.S. 624, 631 (1998)).  To be substantially limiting, "[t]he

impairment's impact must ... be permanent or long-term." <u>Toyota</u>

<u>Motor</u>, 122 S.Ct. at 691 (citing 29 C.F.R. § 1630.2(j)(2)(ii)-

(iii)).  This definition of disability applies to the entire ADA.

    C.   <u>Millet's Disability Claim</u>

    The ADA calls for an "individualized inquiry" when

evaluating a plaintiff's disability claim.  <u>Sutton v. United Air</u>

<u>Lines, Inc.</u>, 527 U.S. 471, 483 (1999); <u>Gelabert-Ladenheim v.</u>

<u>American Airlines</u>, 252 F.3d 54, 59 (1st Cir. 2001).  The Court is

required to determine on a case-by-case basis whether an

individual has offered sufficient evidence "that the extent of

the limitation in terms of [the plaintiff's] own experience ...

is substantial." <u>Albertsons, Inc. v. Kirkingburg</u>, 527 U.S. 555,

567 (1999).

    The parties do not dispute that Millet's agoraphobia and

chronic schizophrenia constitute "impairments" under the ADA.

---

(i) the inability to "perform a major life activity that the
average person in the general population can perform," or (ii)
being "[s]ignificantly restricted as to the condition, manner or
duration under which [one] can perform a particular major life
activity as compared with the condition, manner or duration under
which the average person in the general population can perform
the same major life activity."  29 C.F.R. § 1630.2(j).  <u>See also</u>
<u>Toyota Motor</u>, 122 S.Ct. at 690.

ACAA claims, however, that Millet's impairment does not substantially limit the major life activity of working. ACAA premises its entire argument for dismissal on the Magistrate-Judge's ruling on disability.

>    (a)   Working[11]

"When the major life activity of working is at issue (as opposed to any other major life activity), the plaintiff assumes a more fact-specific burden of proof." Gelabert-Ladenheim, 252 F.3d at 58 (citing Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 11 (1st Cir. 1999)); Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1168 (1st Cir. 2002)(noting that a plaintiff must make a "weighty showing" when seeking to prove that his impairment substantially interferes with the major life activity of working).

When considering whether an impairment is a disability, the Court considers (i) the nature and severity of the impairment;

---

[11]At the outset, the Court notes that the Supreme Court has yet to decide whether working constitutes a major life activity under the ADA. See Sutton, 527 U.S. at 483 (assuming without deciding that working constitutes a major life activity but noting the "conceptual difficulty in defining 'major life activities' to include work"); Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 (1st Cir. 1999)("'Working' itself is a somewhat elastic term...."). The First Circuit has repeatedly assumed arguendo that working is a major life activity under the ADA. See, e.g., Carroll, 294 F.3d at 239 n.7; Gelabert-Ladenheim, 252 F.3d at 58.

(ii) its expected duration; and (iii) its anticipated long-term

impact.  29 C.F.R. § 1630.2(j)(2)(i)-(iii).  Where the major life

activity is working, additional factors include: (i) the

geographical area to which plaintiff has reasonable access; (ii)

the number of jobs in theat geographical area which require the

same abilities as plaintiff's former job, but from which

plaintiff would be disqualified due to his impairment; and (iii)

the number of jobs in that geographical area which do not require

the same abilities as plaintiff's former job, but from which

plaintiff would be disqualified due to his impairment.  29 C.F.R.

§ 1630.2(j)(3).

In the context of working, <u>Sutton</u>'s "individualized inquiry"

requires, first, a focus on the plaintiff's characteristics.  The

inquiry focuses on the plaintiff's education level, training, job

skills, expertise, and knowledge.  Here, the question is what

plaintiff's past and/or present work experience suggests about

his current skills and abilities in the workplace, as compared

with "the average person having comparable training, skills and

abilities."  29 C.F.R. § 1630.2(j)(3)(i); <u>Gelabert-Ladenheim</u>, 252

F.3d at 59.

The second focus is on jobs and the relevant job market: the

job plaintiff held, the jobs closed to plaintiff, and the jobs

open to plaintiff within the reasonably accessible geographic
area.  Millet must show that he is significantly restricted in
his ability to perform "a class of jobs" or "a broad range of
jobs in various classes."[12]  Whitney v. Greenberg, Rosenblatt,
Kull & Bistoli, P.C., 258 F.3d 30, 33 (1st Cir. 2001); Gelabert-
Ladenheim, 252 F.3d at 60; Bailey, 306 F.3d at 1168.  "If jobs
utilizing an individual's skills (but perhaps not his or her
unique talents) are available, one is not precluded from a
substantial class of jobs.  Similarly, if a host of different
types of jobs are available, one is not precluded from a broad
range of jobs."  Sutton, 527 U.S. at 492.

Thus, a plaintiff seeking to show that he is substantially
limited in the major life activity of working must bring forth
evidence concerning the accessible geographic area, the numbers
and types of jobs in the area foreclosed due to the impairment,
and the types of training, skills, and abilities required by the
jobs.  See 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C); see also Duncan
v. Washington Metro Area Transit Auth., 240 F.3d 1110, 1115-16

---

[12]The First Circuit has noted that "[t]he inability to
perform a single, particular job does not constitute a
substantial limitation in the major life activity of working."
Carroll, 294 F.3d at 239-240 (citing Lebron-Torres, 251 F.3d at
240)(internal citations omitted).

(D.C. Cir.), <u>cert. denied</u>, 122 S.Ct. 49 (2001)("[T]he ADA requires a plaintiff ... to produce some evidence of the number and types of jobs in the local employment market in order to show he is disqualified from a substantial class or broad range or such jobs ...."); <u>Arce v. Aramark Corp.</u>, 2003 WL 136198, *12 (D.P.R. January 10, 2003)(holding that plaintiff failed to present evidence regarding the employment demographics in the relevant geographic areas, from which a factfinder rationally might assess the appropriate § 1630.2(j)(3) criteria). Such evidence may take the form of expert vocational testimony, or, in appropriate cases, publicly available labor market statistics.[13] <u>See</u>, <u>e.g.</u>, <u>Carroll</u>, 294 F.3d at 240; <u>Lebron-Torres v. Whitehall Labs.</u>, 251 F.3d 236, 240 (1st Cir. 2001); <u>Duncan</u>, 240 F.3d at 1116-17.

Millet has not proffered specific evidence showing that he is disqualified from a substantial class of jobs or a broad range of jobs.[14] Nor has he presented evidence regarding the

---

[13]Thus, "different results could be reached with respect to plaintiffs who suffer from identical physical impairments but who, due to a variety of factors like the economic health or geographic location of an area, face dissimilar employment prospects." <u>Gelabert-Ladenheim</u>, 252 F.3d at 58-59.

[14]Millet proffered evidence regarding the Social Security Administration's decision to regard Millet as "totally disabled."

employment demographics in the relevant geographic areas from which a factfinder could assess the appropriate § 1630.2(j)(3) criteria. Indeed, he has not presented expert vocational testimony or government statistics to bolster his disability claim. Millet has only proffered generic, subjective evidence of his limitations when it comes to work.[15] That is simply not enough. Beyond his own conclusory statements about his own job prospects, Millet has presented insufficient evidence to support his claim. See Quint, 172 F.3d at 12. Accordingly, the Court concurs with Magistrate-Judge Gelpi's conclusion that Millet is not substantially limited in the major life activity of working.

    (b)  <u>Thinking</u>

Millet strenuously contends that he is also substantially limited in the major life activity of thinking.[16] Viewing the

_____

Several courts have noted that such a finding is not dispositive in the ADA context. <u>See</u>, <u>e.g.</u>, <u>Sheehan v. Mars</u>, 207 F.3d 35, 40 (1st Cir. 2000); <u>Weigel v. Target Stores</u>, 122 F.3d 461, 467 (7th Cir. 1997).

[15]For example, the record shows that Millet made an unsuccessful attempt to obtain a job as a veterinary's assistant. The record also shows that Millet works from his home, running a food catering business and breeding dogs. Inexplicably, Millet claimed (Docket No. 74) that dog breeding represented his sole source of income, even when the record plainly shows otherwise.

[16]The Magistrate-Judge did not consider this question in his reports and recommendations. One problem in evaluating Millet's disability argument is that, at various times, he makes

22

facts in the light most favorable to Millet, the Court finds that

he has proffered sufficient evidence to create a genuine issue of

material fact sufficient to preclude summary judgment.

Most Circuit Courts that have considered the issue have

concluded that thinking is a major life activity.[17]  See, e.g.,

Taylor v. Phoenixville School Dist., 184 F.3d 296, 307 (3rd Cir.

1999)("We accept that thinking is a major life activity.");

Nawrot v. CPC Int'l, 277 F.3d 896, 903 (7th Cir. 2002); EEOC v.

Sara Lee Corp., 237 F.3d 349, 353 (4th Cir. 2001); Doyal v.

Oklahoma Heart, Inc., 213 F.3d 492 (10th Cir. 2000).

Since the claimed major life activity is thinking[18] (as

---

generalized claims about his condition (for example, when he
contends that his disability substantially limits "the most basic
major life activity of being able to live without falling trap to
an emotional crisis") that make it difficult to ascertain the
specific major life activity to which he is alluding.
Nevertheless, the Court believes that Millet proffered sufficient
evidence on the major life activity of thinking to warrant
consideration.

[17]In Whitney, the First Circuit did not expressly decide
that thinking constituted a major life activity, but agreed with
the district court's reasoning that thinking could be reasonably
subsumed within the broader context of "learning" for purposes of
its analysis.  258 F.3d at 33 n. 4.

[18]The First Circuit has expressly held that "interacting
with others" (which Millet argued was a major life activity) is
not a major life activity.  See Soileau v. Guilford of Maine,
Inc., 105 F.3d 12, 15 (1st Cir. 1997).  The courts have reached
different results on the question whether concentrating is a
major life activity.  See, e.g., Gagilardo v. Connaught

23

opposed to working), the evidentiary burden is not as exacting on
Millet.  Even if it was, the Court believes that Millet has
presented sufficient facts regarding his mental condition, and
particularly regarding his capacity to think as compared to the
general population, to create a triable issue on this score.

Of course, in light of _Sutton_, the question becomes whether,
at the time Millet suffered the alleged discriminatory treatment,
his impairment remained a disability under the ADA by imposing a
substantial limitation on the major life activity of thinking
*even while medicated*.  The record, as it now stands, contains
conflicting evidence on this issue.  It appears, on the one hand,
that the medication controls his symptoms to an extent, but it
also appears that he has experienced significant emotional crises
even while taking his medication.  See _Nawrot_, 277 F.3d at 905.
It is therefore unclear, based on the record evidence, the extent
to which the medication serves to mitigate his impairment.

In sum, Millet has proffered sufficient evidence that his
mental condition substantially limits the major life activity of
thinking, and that the condition is expected to last for a

---

_Laboratories, Inc._, 311 F.3d 565, 569 (3rd Cir.
2002)(concentrating is a major life activity); _Pack v. Kmart
Corp._, 166 F.3d 1300, 1305 (10th Cir. 1999)(concentrating is not
a major life activity).

prolonged period of time, if not permanently.  Accordingly, the Court denies ACAA's summary judgment motion.[19]

### CONCLUSION

For the foregoing reasons, the Court adopts the Magistrate Judge's report and recommendation and grants defendants Gonzalez Alonso and Santiago Ponce's motion for summary judgment.  The Court denies ACAA's motion for summary judgment.  The Court shall issue a new Trial Scheduling Order contemporaneously with this Opinion and Order.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 18th day of February, 2003.

JAY A. GARCIA GREGORY
United States District Judge

---

[19]It appears that Millet may be able to recover compensatory damages against ACAA if he can show that ACAA intentionally discriminated against him.  Neither the Supreme Court nor the First Circuit have squarely decided whether a plaintiff may recover compensatory damages under Title II.  See Parker, 225 F.3d at 8; see also Kiman v. New Hampshire Dept. of Corrections, 301 F.3d 13 (1st Cir. 2002)(holding that, under certain circumstances, a plaintiff may recover compensatory damages under Title II); Kiman, 310 F.3d 785 (1st Cir. 2002)(granting motion for rehearing en banc and withdrawing earlier panel opinion). Since it appears that ACAA is not an arm of the state, however, it may also be that the Eleventh Amendment abrogation issue may not apply in this specific context.  (Docket No. 135 at 4.)